IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **APPLIED BIOLOGICS LLC,** <br><br> *Plaintiff*, <br><br> **v.** <br><br> **ANEW YOU LLC,** <br><br> *Defendant*. | **CIVIL ACTION NO.** <br> **5:25-cv-00515-TES** |

**ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND
DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

This case is before the Court on Defendant Anew You LLC's Motion to Set Aside

Default [Doc. 12], and Plaintiff Applied Biologics LLC's Motion for Default Judgment

[Doc. 15]. The parties' arguments in both motions center on whether Defendant has

shown good cause to set aside the clerk's entry of default against it to defeat a default

judgment. For the following reasons, the Court **DENIES** Defendant's Motion to Set

Aside Default [Doc 12] and **DENIES** Plaintiff's Motion for Default Judgment [Doc. 15]

until it can hold an evidentiary hearing.

The facts underlying this dispute are simple. Plaintiff manufactures a product

called XWRAP that is used to manage chronic wounds. [Doc. 1, ¶¶ 7–8]. Defendant

ordered XWRAP from Plaintiff. [*Id.* at ¶ 10]. Plaintiff shipped the product to Defendant

and sent Defendant invoices between May and July of 2024. [Doc. 1, ¶ 11]; [Doc. 1-1, pp.

2–4]. The invoices required payment within 60 days. [Doc. 1, ¶ 12]. Defendant made partial payments totaling $744,791.69 but did not pay the remaining balance on the invoices—$2,403,700.64. [*Id.* at ¶¶ 13, 14].

On October 3, 2025—over one year after the last invoice—Plaintiff's counsel sent Defendant a demand letter, giving Defendant 10 days to pay the remaining balance. [*Id.* at ¶ 16]. Defendant did not pay by the deadline. [*Id.* at ¶ 17]. Instead, it responded with a letter claiming that there was no enforceable agreement while simultaneously arguing that payment for the XWRAP was conditioned on Defendant getting reimbursed from Medicare. [Doc. 16-1]. In the email, Defendant stated that this condition for payment was "[u]nder the governing agreement," but didn't identify any such agreement. [*Id.* at p. 1]. That letter also contained a settlement offer: "50% of the claimed balance" ($1,201,850.32); "[e]qual monthly installments, tied to actual Medicare and insurance claim payments received;" and release of claims. [*Id.* at p. 2].

Twelve days later, Defendant sent Plaintiff another letter arguing that without an "executed contract or binding agreement, . . . no enforceable obligation [to pay] exists." [Doc. 16-2]. Plaintiff responded by sending Defendant the invoices, order forms, packing slips, etc. for the shipment of XWRAP. [Doc. 16-3]. Defendant replied by stating that it "does not recognize invoices, packing slips, UPS tracking records, or an unsigned order form as an executed agreement . . . ." [*Id.* at p. 1].

On October 20, 2025, Defendant sent Plaintiff another letter stating that "[n]o executed contract or binding agreement establishing liability in the absence of Medicare/insurance reimbursement was provided." [Doc. 16-4]. Defendant went on to say that "the claim is hereby disputed in full." [*Id.*]. It then made a demand of its own: either provide the fully executed agreement establishing liability or withdraw the claim in writing. [*Id.*]. Defendant explicitly stated in this letter that it "will take no further action on this matter and will treat the prior demand as unsubstantiated" without a fully executed agreement. [*Id.*]. That's exactly what Defendant did.

On November 25, 2025, Plaintiff filed its Complaint in this Court seeking recovery of the unpaid balance plus interest and attorney's fees. [Doc. 1]. Defendant's deadline to file an answer or responsive pleading was January 27, 2026. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Three days after its deadline, Defendant filed a Motion to Dismiss. [Doc. 7]. But, Defendant's motion was insufficient for two reasons. First, it was one sentence long, merely asking the Court to "dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted." [*Id.*]. Second, it was filed by a non-lawyer on behalf of an LLC. [*Id.*]. On February 2, 2026, the Court denied Defendant's Motion and advised that an LLC can only appear in court through an attorney. [Doc. 8, p. 2]. The Court gave Defendant another chance to file an answer, which was due "within the applicable time limits set by the Federal Rules of Civil Procedure." [*Id.*]. The

Court also warned Defendant of the risk of default should it fail to file a proper answer. [*Id.*].

When Defendant failed to timely retain an attorney and file an answer, Plaintiff filed an application to the Clerk for an entry of default, and the Clerk entered default on February 23, 2026. [Doc. 9]; [Doc. 10]. Ten days after the entry of default and 31 days after the Court's order, Defendant finally filed a Motion to Set Aside Default. [Doc. 11]; [Doc. 12]. Plaintiff, in accordance with the Clerk's instructions upon entry of default, then filed a Motion for Default Judgment. [Doc. 15]. Both motions are ripe for review.

I.    **Defendant's Motion to Set Aside Default [Doc. 12].**

Pursuant to Fed. R. Civ. P. 55(a), the Clerk of Court must enter a party's default if that party's failure to plead or otherwise defend an action against it "is shown by affidavit or otherwise." The Eleventh Circuit "generally view[s] defaults with disfavor due to [their] strong policy of determining cases on their merits." *Sherrard v. Macy's Sys. & Tech. Inc.*, 724 F. App'x 736, 738 (11th Cir. 2018) (quoting *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)). So, when a defaulting party can show "good cause," Rule 55(c) allows the Court to set aside an entry of default. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

While "good cause" is undoubtedly a malleable and liberal standard to be applied to the facts of a specific case, it isn't so loose that any excuse offered by a

defaulting defendant will meet it. In other words, the "good cause" standard has real substance. *Compania*, 88 F.3d at 951 (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)). While there's no set formula to guide the standard, courts have developed some general guidelines. *Id.* For example, courts consider "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, . . . whether the defaulting party presents a meritorious defense[,]" and "whether the defaulting party acted promptly to correct the default." *Id.* at 951–52. The burden of establishing good cause is on the defaulting party. *Sherrard*, 724 F. App'x at 738. The good-cause analysis "does not require that each factor be satisfied." *Id.* at 739. "Ultimately, the 'district court may set aside an entry of default only if the defaulting party can provide a good reason for the district court to do so.'" *Campbell v. Bennett*, No. 1:18-CV-01064-CAP, 2019 WL 12763079, at *2 (N.D. Ga. Apr. 10, 2019) (quoting *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999)).

Defendant has not provided a good reason to set aside default here. In short, Defendant has provided no explanation for its failure to timely file an answer after the Court's previous order, and its arguments about "good-faith" efforts and meritorious defenses are unpersuasive. More specifically, Defendant bears the burden of establishing that (1) the default was not willful, (2) setting aside the default would not prejudice Plaintiff, (3) it has a meritorious defense to Plaintiff's claims, and (4) it acted promptly to correct its default. *Compania*, 88 F.3d at 951–52. Not unsurprisingly,

Defendant argues that its actions were not willful, but rather excusable neglect; setting aside the default would not prejudice Plaintiff since the case is in its early stages; Defendant has meritorious defenses to Plaintiff's claims, including disputing multiple allegations by Plaintiff; and Defendant acted promptly. [Doc. 12, pp. 4–6].

The Court starts with willfulness since a finding of willfulness alone can overcome a motion to set aside default. *Compania*, 88 F.3d at 952. Defendant argues that its default was not willful because it resulted from "excusable neglect, misunderstanding, or good faith efforts to respond, rather than intentional disregard." [Doc. 12, p. 4]. According to Defendant, courts in the Middle District of Georgia have "found non-willfulness where *pro se* efforts, though improper, demonstrate intent to defend." [*Id.* (citing *Bibb Cnty. Sch. Dist. v. Dallemand*, No. 5:16-cv-549 (MTT), 2019 WL 2492281, at *2 (M.D. Ga. June 13, 2019))]. Further on, Defendant argues that courts have excused procedural missteps in similar circumstances. [Doc. 12, p. 4]. But, the cases Defendant cites (including its parentheticals) do not support the propositions it claims.[1]

---

[1] The Court takes issues with several of Defendant's citations. For example, Defendant points to *Compania* for the supposed holding that "default not willful where party made mistaken, but good-faith attempt to defend." 88 F.3d at 951; [Doc. 12, p. 4]. But, in *Compania*, the Eleventh Circuit affirmed the district court's ability to find willfulness without intentional acts. 88 F.3d at 952. Defendant also cites *Compania* to state that "excusing [procedural missteps] when party misunderstood requirements." 88 F.3d at 951–52; [Doc. 12, p. 4]. Once again, Defendant's cites just aren't accurate. *Compania* does not deal with a party misunderstanding requirements or the court excusing missteps for misunderstanding. 88 F.3d at 951–52.

Defendant next cites *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1338 (11th Cir. 2014), asserting that it held that "good cause [was] met where delay stemmed from procedural error, not intent to ignore." [Doc. 12, p. 4]. But, in *Perez,* the Eleventh Circuit did not find the defendant showed good cause or even that delay stemmed from a procedural error. 774 F.3d at 1338–39. Instead, the Eleventh Circuit found that the

6

Other than these citations, Defendant's only argument against willfulness is that it made a "good-faith effort" to respond by filing its Motion to Dismiss. But, Defendant's one-sentence, untimely Motion to Dismiss hardly represents a good faith effort to respond, especially considering that Defendant had previously articulated a much more detailed position in its multiple letters to Plaintiff. [Doc. 16-1]; [Doc. 16-2]; [Doc. 16-3]; [Doc. 16-4]. In the Court's view, Defendant was doing exactly what it promised: taking "no further action on this matter and treat[ing] the prior demand as unsubstantiated." [Doc. 16-4]. Until the Court warned Defendant of the possibility of default and the resulting damages, Defendant simply didn't take the litigation seriously and hire an attorney. Even then, Defendant waited almost a month from the Court's order before filing anything.

So, were Defendant's actions willful or culpable? After examining the entire record, the Court finds they were. *See Compania*, 88 F.3d at 951–52 (default is willful if party displays "an intentional or reckless disregard for the judicial proceedings"). Simply put, when the Court considers:

- Defendant's single-sentence Motion to Dismiss (after previously and

---

district court applied the wrong standard to the defaulting party's motion and remanded the case so the district court could apply the Rule 55 standard. *Id.*

Finally, Defendant cites *Bibb Cnty. Sch. Dist.*, as support for its pro se argument, and asserts the case found "good cause . . . where delay stemmed from procedural error, not intent to ignore." 2019 WL 2492281, at *2; [Doc. 12, p. 4]. But, the defaulting defendants in *Bibb Cnty. Sch. Dist.* were not pro se, and the court there does not even mention "pro se" in its order. 2019 WL 2492281, at *1–4.

repeatedly articulating much more detailed responses),

- its late filings,

- its multi-week delay to comply with the Court's previous Order and

-  its repeated pre-litigation letters demanding a "fully executed agreement" showing it was required to actually pay for the more than $2,000,000 in products it ordered, received and apparently used for more than a year without payment,

the Court exercises its considerable discretion and finds that these actions demonstrate an intentional disregard for the judicial proceedings sufficient to support a finding of willfulness and/or culpability. As explained above, a finding of willfulness or culpability alone is sufficient to deny a Motion to Set Aside Default.

However, the Court recognizes that Defendant's willfulness in this case may not be as extreme as some cases the Eleventh Circuit has affirmed in its published opinions. *See, e.g.*, *Savoia-McHugh v. Glass*, 95 F.4th 1337, 1346 (11th Cir. 2024) (finding default was willful when the defendant did not respond for 15 months and only hired counsel after the magistrate judge mentioned sanctions). So, out of an abundance of caution, the Court analyzes the other good-cause factors below.

Defendant has shown that Plaintiff will not be prejudiced by setting aside the default. "The inquiry . . . is whether prejudice results from the *delay*, not from having to continue to litigate the case." *Sherrard*, 724 F. App'x at 738 (quoting *Connecticut State*

8

*Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1357 (11th Cir. 2009)). Plaintiff

argues that setting aside the default would prejudice it by making it continue to wait to

enforce its right to payment, and by making it spend more money on attorney's fees.

[Doc. 16, pp. 10–11]. In Plaintiff's words, setting aside the default would "punish[]

Plaintiff for its diligent efforts." [*Id.* at p. 11]. But, there is no prejudice in requiring

Plaintiff to prove its claim or in increased litigation costs. *Sherrard*, 724 F. App'x at 739.

Next, Defendant has not shown it has any meritorious defense. A defendant

doesn't get to escape default by merely declaring that it has a meritorious defense. *Bibb*

*Cnty. Sch. Dist.*, 2019 WL 2492281, at *3 (quoting *Sherrard*, 724 F. App'x at 739). No, in

order to escape default, a party has to go deeper and demonstrate that any supposed

defense has actual, not just claimed, merit.

In its motion to set aside default, Defendant says its "defense" is that it "disputes

the balance due on the account, payment terms (i.e., invoices say 'Net 60,' while the

parties agreed that payments would be made to Plaintiff from Defendant after

Defendant was paid via reimbursements), credits for payments made, and product-

specific issues . . . ." [Doc. 12, pp. 5–6]. In other words, most of Defendant's meritorious

"defenses" are simply defenses to damages, which have long been held to be

insufficient. *See First Nat'l Bank of Oneida, N.A. v. Brandt*, No. 8:16-CV-51-T-17MAP, 2017

WL 235181, at *1 (M.D. Fla. Jan. 18, 2017) ("defenses relating solely to the issue of

damages, as opposed to liability, do not constitute meritorious defenses for purposes of

setting aside a default . . . ."); *see also United States v. Pansier*, No. 17-C-1740, 2021 WL 913335, at *2 (E.D. Wis. Mar. 10, 2021) ("a dispute as to damages does not constitute a meritorious defense to the claims"). Nowhere does Defendant doubt that it owes Plaintiff some money – it simply quibbles over how much. That is not a meritorious defense.

Defendant also cites to its proposed answer in its argument that it "will present meritorious defenses sufficient for good cause." [Doc. 12, p. 5]. However, listing 11 boilerplate defenses in a proposed answer offers no showing of merit as required to avoid default, and does nothing to help a reviewing court determine the merit of any alleged defense to liability.

To be sure, the burden for showing a meritorious defense is "exceedingly light." *Car Wash Dev. Grp., LLC v. MRE EXP Wash, LLC*, No. 1:22-CV-4441-TCB, 2023 WL 11762894, at *3 (N.D. Ga. Mar. 28, 2023) (quoting *U.S. Bank N.A. as Tr. For RMAC Tr., Series 2016-CTT v. Son Van Doung*, No. 1:18-cv-3594-LMM-JSA, 2019 WL 9048962, at *7 (N.D. Ga. Oct. 23, 2019)). But, making a "hint of a suggestion" of a defense still requires some kind of showing. *See id.* at *3 (where the defendant made "reasonable arguments tethered to [the] law and the facts of this case.") (quoting *United States Corp. v. Freeman*, 605 F.2d 854, 857 n.4 (5th Cir. 1979)). Merely referencing a list of generalized defenses

with no hint of how they might apply to the case at hand is insufficient to establish a meritorious defense to set aside default.[2]

Eliminating those generalized pleadings leaves Defendant with its argument that the contract conditioned payment on reimbursement from Medicare—its original and pre-litigation argument. [Doc. 12, p. 5]; [Doc. 12-1, p. 1]. But, Defendant admits it has made more than $700,000 in partial payments to Plaintiff before it stopped paying. [Doc. 12-1, ¶ 13]. Defendant has not argued that it did not make the payments, that it disputed the terms of the contract during these partial payments, or even that Medicare reimbursed it for the $700,000 previously paid. Instead, Defendant made partial payments, stopped without explanation, and then raised its reimbursement argument when Plaintiff pressed for continued payments. Defendant has not shown that it has a meritorious conditions defense.

Finally, Defendant has not shown that it acted promptly. Defendant states that it "attempted to respond pro se within weeks of service," and then "promptly retained counsel" and "quickly" filed the Motion to Set Aside Default after the Court's previous Order. [Doc. 12, p. 6]. But, as shown above, Defendant waited 31 days from the Court's previous Order that informed Defendant of its need to file a timely response or face

---

[2] Defendant cites *Compania* to say that "general denials and factual disputes suffice" for a meritorious defense. [Doc. 12, p. 5]. But, the court in *Compania* does not mention meritorious defenses beyond the legal standard for setting aside a default. 88 F.3d at 951–52. Rather, the Eleventh Circuit has explicitly held that "a moving party cannot satisfy the burden of showing a meritorious defense simply by 'asserting a general denial.'" *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1296 (11th Cir. 2003).

default to hire an attorney and correct the default to file a response. [Doc. 8]; [Doc. 11]; [Doc. 12]. That was 10 days after the Clerk's official entry of default, and 17 days after its time to file an answer under the Court's previous Order had expired. [Doc. 10]; Fed. R. Civ. P. 12(a)(4)(A). Defendant has not pointed to any caselaw showing that this timeline is "prompt," and the caselaw Defendant has pointed certainly does not support its argument.[3] With no other argument or reasons to support its delay, the Court finds that Defendant has not met its burden of showing promptness.

Courts considering whether to set aside defaults are given wide discretion. Here, the Court exercises that considerable discretion and finds that Defendant has not established good cause to set aside its default. The Court **DENIES** Defendant's Motion to Set Aside Default. [Doc. 12].

## II.      Plaintiff's Motion for Default Judgment [Doc. 15].

After default has been entered, the Clerk may enter a default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an

---

[3] Defendant once again turns to *Compania*, 88 F.3d 948, 951 (11th Cir. 1996), stating that the court there found "promptness . . . where moved shortly after learning." [Doc. 12, p. 6]. But, *Compania* affirms denial of a motion to set aside default because of willfulness. 88 F.3d at 952. There is no discussion that this Court can find in *Compania* regarding promptness under Rule 55. *See id.* at 951–952. Defendant also cites *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 529 (11th Cir. 1990) to state that "weeks are sufficient." [Doc. 12, p. 6]. While *EEOC* does discuss timeline, it does not affirm that "weeks are sufficient." 896 F.2d at 529. Instead, the court in *EEOC* affirmed denial of a motion to set aside default when the defaulting party's counsel waited a month after default to file an entry of appearance, and then another four months to file a motion to set aside the default. 896 F.2d at 529.

appearance. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the

Court for a default judgment. Fed. R. Civ. P. 55(b)(2). The Court must hold an

evidentiary hearing to determine damages unless all the essential evidence is already on

the record. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("We have held

that no such hearing is required where all essential evidence is already of record."); *see

also* Fed. R. Civ. P. 55(b)(2) ("The court *may* conduct hearings . . . ." (emphasis added)).

After the Clerk's entry of default, a defendant is deemed to admit all well-

pleaded factual allegations in the complaint. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l

Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4] An entry of default against the defendant does

not establish that the plaintiff is entitled to a default judgment, however. The defendant

is not deemed to admit (1) facts that are not well-plead or (2) conclusions of law. *Id.*

"The Court must consider whether the unchallenged facts constitute a legitimate cause

of action, since the party in default does not admit a mere conclusion of law. In

considering any default judgment, the Court must consider (1) jurisdiction, (2) liability,

and (3) damages." *Johnson v. Rammage*, 5:06-CV-057 (CAR), 2007 WL 2276847, at *1

(M.D. Ga.) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)).

However, a defaulting defendant is not deemed to admit the plaintiff's allegations

relating to the amount of damages. *Patray v. Nw. Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Ga. 1996); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters . . . .").

For damages here, Plaintiff filed invoices and an affidavit of attorney's fees, totaling $2,427,591.10. [Doc. 1-1]; [Doc. 15-1]. Defendant disputes Plaintiff's damages, including credits for payments made. [Doc. 12, pp. 5–6]. So, the Court will hold an evidentiary hearing on the issue of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Musson v. Jones et al.*, No. 4:22-CV-124, 2024 WL 6965842, at *2 (S.D. Ga. Mar. 29, 2024) (whether to hold a jury trial on damages is within the Court's discretion); Fed. R. Civ. P. 38(d).

### III.   Conclusion

In conclusion, the Court **DENIES** Defendant's Motion to Set Aside Default [Doc. 12] and **DENIES** Plaintiff's Motion for Default Judgment [Doc. 15]. The parties are **ORDERED** to confer within 10 days of this Order and let the Court know how long they need for a hearing on damages. The Court will then schedule an evidentiary hearing on the issue of damages.

**SO ORDERED**, this 27th day of May, 2026.

<u>S/ Tilman E. Self, III</u>
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

14